T. Frazier *et al* *v.* R. L. Gains *et al.*

THOMAS FRAZIER *et al.* *v.* R. L. GAINS *et al.*

1. PRINCIPAL AND SURETY. *Blank indorsement.* A note signed in blank·
by the sureties, and delivered to the principal, authorizes him to fill
it up to any amount, and his act, although the amount may exceed
their expectations, is binding upon them, if the note come to the
hands of an innocent holder before maturity. The note not being
negotiable does not alter the case, nor does the fact that a seal was
affixed, since the abolishment of private seals. If payable in bank
notes the measure of damages will be the value of such notes at
maturity.

Cases cited: 22 How., 97; Waldren *et al. v.* Young; MSS. Jackson, 1872;
Goodman *v.* Simonds, 20 How., 361; 10 Cush., 373; Violet *v.* Patton,
5 Cranch, 142; 2 Dana, 514; 22 Eng. Law and Eq., 516; Bank of
Pittsburg *v.* Neal *et al.,* 22 How., 111; 1 Smedes & M., 25; 2 Dana,
142; 5 Ind., 258; 9 Ala., 800; 13 Id., 271; 18 Con., 353; 1 Smedes
& M., 17; 6 Ala., 44; 8 Ind., 787; 1 Amer..L. C., 575.

FROM WARREN.

Appeal from the Chancery Court. B. N. TILL-
MAN, Chancellor.

E. H. EWEN· for Frazier *et al.*

T. B. MURRAY, A. S. MARKS and JNO. H. SAV-
AGE for Gains *et al.*

SNEED, J., delivered the opinion of the Court.

The complainants are Thomas N. Frazier and Jas.
H. Fulloss, and have brought their bill to be relieved
from the payment of a note, in the words and figures
following:

"Sixty days after date, we, or either of us, promise
to pay Gracy & Gains seven thousand two hundred
and ninety-eight dollars and seventy-five cents in cur-
rent bank notes, for a lot of bacon, for value re-

T. Frazier *et al. v.* R. L. Gains *et al.*

ceived of them.   Witness our hands and seals, this
10th of April, 1862."          T. C. GOFF,   [L. s.]
                            ISAAC B. HENSON,   [L. s.]
                        J. A. FULLOSS, SEC'Y,   [L. s.]
                    THOS. H. FRAZIER, SEC'Y,   [L. s.]

The complainants signed said note while the
amount was in blank, the said Fulloss agreeing to be
the surety of Henson, and the said Frazier the surety
of Goff.   The note was given for a lot of bacon,
sold and delivered by Gracy .& Gains to Henson &
Goff.   Before the execution of said note, Henson &
Goff had contracted with .Gracy & Gains, in writing,
for a lot of bacon, estimated to contain thirty thou-
sand pounds, more . or less, at twenty-five cents per
pound, in current bank notes, .and they were required,
as a condition precedent to the delivery of the bacon,
to execute a note with two good securities for the
price.   At that time the bacon had not been weighed,
and the precise amount not ascertained.   The note
was, however, prepared in advance, and was presented
first to Fulloss, and then to Frazier, who signed the
note in blank as to the amount, the same having ·
already been signed by their principals.   The note
was then brought to the · defendants, Gracy & Gains,
who thereupon weighed and delivered about thirty
thousand pounds of bacon, amounting in value, ac-
cording to the contract, to seven thousand. two hundred
and ninety-eight dollars and seventy-five cents, which
amount was inserted in the note, upon the delivery
of the bacon, of which thirty-three hundred dollars

has been paid by the principals, and credited upon the note, leaving the balance of four thousand two hundred and ninety-eight dollars and seventy-five cents unpaid, and now in controversy. The complainants claim to be exhonerated from the payment of any part of said note, on the ground that their principals were not authorized to bind them for more than three thousand dollars; and that the payment of three thousand three hundred dollars on said note was intended to relieve them to the extent of their liability, and that they are not bound for any more.

It appears that Gracy & Gains took said note in good faith, with no knowledge of any understanding or agreement between the principals and sureties, as to the extent of the liability assumed by the latter, or of any representation made by the principals to the sureties of the probable amount for which said note was to be filled up; and that they accepted said credit of three thousand three hundred dollars without any knowledge that the same was understood by either of the parties to be in exhoneration of the complainants from any further liability. The ground assumed by the complainant is, that there was an understanding between Goff and Henson that they, the complainants, were not to be bound for more than about the sum of three thousand dollars, and that with this amount the note was to be filled up. But it is not shown in the proof that Gracy & Gains had any knowledge of any understanding. On the contrary, the proof satisfies us that they were in

utter ignorance of it. It does not appear either, that either Fulloss or Frazier placed any positive limit or restriction upon their principals, as to the amount for which said note was to be given; but their equities rest upon the ground that they were deceived by the representations of Goff, as to the amount of the bacon bargained for, and that they did not expect to be bound for more than three thousand dollars. Upon this point their own testimony is decisive. It seems that Goff represented to Fulloss that the bacon would not amount to more than three or four thousand dollars, and Fulloss states in his deposition that he did expect the note to be filled up for three thousand dollars, or near that sum, and that he did not authorize them to fill up the note in any other amount; while Frazier, in his testimony, states that "Goff did not know precisely the amount the note would be for, but thought about three thousand dollars, a little more or less. That he did not authorize Goff, or any one else, to fill up the blank with any amount whatever, but that he signed with the expectation and belief that Goff would fill up the note with the sum he had previously represented to him that the bacon would come to, or the sum of three thousand dollars, or about that sum, and expected to be responsible for that sum, but nothing was said about the amount, or about its being filled up with any amount."

It appears that Goff had made these representations to Frazier about two weeks before the latter

signed the note, and when the note was carried by
Goff to Frazier to get his signature, the latter dis-
covered that it was in blank, as to the amount, but
seeing that all the other parties had signed it, and
relying upon Goff's representation, previously made,
he signed the note without further questions, and de-
livered it to Goff in its blank condition.

It will be observed from this statement that the
complainants do not bring themselves within the prin-
ciples governing a case where the payee of a note is
advised of the fact that the agent exceeds his au-
thority in filling a blank in a note, or even within
the principles of the case, when there is a positive
restriction upon the agent's authority.   It is mani-
fest that the complainants were deceived by the man
they trusted, and whom they were befriending, but the
defendants are innocent of all connivance at, or knowl-
edge of, the wrong at the time they parted with
their property for the note; and we know of no
principle upon which this overweening confidence of
the complainants can be visited upon the defendants.
Whatever might have been the first expectations of
the complainants as to the result, yet they did not
limit the authority of their agents, nor do they fix
notice upon the defendants of the deception; and
they must be held bound upon the familiar doctrines
of the law which govern the relation of principal
and agent; nor is the application of these doctrines
affected in the least degree by the non-negotiability
of the note in question, nor by the circumstance that

a seal or scroll is affixed to the signature upon the note, as the note was executed after the enactment of the statute which abolishes the private seal to contracts, and abrogates the effect of a seal as it existed at common law.

The equities of the parties must, therefore, rest upon the familiar principle that where one of two innocent parties must suffer through the fraud or negligence of a third party, the loss must fall on him who gave the credit. 22 How., 97; *Waldren et al.* v. *Young,* MSS. Jackson, 1872.

The rule is, that when one party, intending to accommodate another, signs his name to a blank paper, he authorizes the other to whom he delivers it, and for whose accommodation it was made, to fill up the blank, and he is bound by it. *Goodman* v. *Simonds,* 20 How., 361; 10 Cush., 373; *Violet* v. *Patton,* 5 Cranch, 142; 2 Dana., 142; 22 Eng. Law and Eq., 516. So a note signed in blank and delivered is an authority in law to fill it up to any amount; it is an unlimited letter of credit, and the intention of the principal as to the amount to be inserted could not control the act of the agent in dealing *bona fide* with third parties. *Bank of Pittsburg* v. *Neal et al.,* 22 How., 111; 5 Mon., 25; 2 Dana., 142; 5 Ind., 258; 9 Ala., 800; 13 Id., 271; 18 Conn., 353.

If the note, however, be taken with the knowledge that it has been filled in violation of the limitation imposed by the principal, the holder will be in no better situation than the agent. I Smedes &

Mar., 17; 6 Ala., 44; 8 'Ala., 787; 1 Amer. L. C., 575.

In this case, whatever the complainants might have understood as to the amount for which they were to be bound from the representation of their principals, yet there was no positive restriction upon the latter, and even if there had been, the defendants parted with their property for the note in good faith, and without any knowledge of any such understanding.

The complainants must, therefore, be held bound upon the note, and can not be heard to complain as against innocent parties, of an act occasioned by their own incaution. The note is, however, payable in current bank notes, and the measure of their liability must be the value of current bank notes at the time of the maturity of the note.

The decree will be reversed, and the cause remanded for an account of the value of the currency contracted to be paid, and for further proceedings in accordance with this opinion. The costs of this Court and the Court below will be paid by complainants.